**Exclusive Right of Sale Listing Agreement**

CHARLES RUTENBERG REALTY
"The Standard of Excellence"

1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2* ~~RICHARD DAUVAL~~, CH. 7 TRUSTEE FOR RONALD STEELE 19-06147, Nicole Camevon ("Seller")
3* and Charles Rutenberg Realty, Inc ("Broker").

4  1. **Authority to Sell Property:** **Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5     property (collectively "Property") described below, at the price and terms described below, beginning
6* AUGUST 14, 2019 and terminating at 11:59 p.m. on AUGUST 14, 2020 ("Termination Date"). Upon
7     full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8     automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9     that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10    color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11    law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12 2. **Description of Property:**
13*   (a) Street Address: 9458 WATERFORD OAKS DR, WINTER HAVEN FL 33884-2233
14
15*   Legal Description: WATERFORD OAKS PB 116 PGS 10 & 11 LOT 38
16*   ☐ See Attachment

17*   (b) Personal Property, including appliances: 
18*   ☐ See Attachment

19    (c) Occupancy:
20*   Property ☐ is ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21 3. **Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*   (a) Price: $435,000
23*   (b) Financing Terms: ☒ Cash ☒ Conventional ☒ VA ☒ FHA ☐ Other (specify) _____
24*   ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
25*   with the following terms: _____
26*   ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27*   an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*   _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*   Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller:** (1) You may
30    remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31    lender to determine the extent of your liability. ~~Seller will ensure that all mortgage payments and required~~
32    ~~escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.~~
33    (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34    authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35    whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36    advised to consult with a legal or mortgage professional to make this determination.
37*   (c) **Seller Expenses:** **Seller** will pay mortgage discount or other closing costs not to exceed 0 % of the
38    purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39 4. **Broker Obligations:** **Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40    contract is pending on the Property.

41 5. **Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42    because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43    obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44    directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45    terms, and financing information on any resulting sale for use by authorized Board / Association members and
46    MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-17tb   Rev 6/17                                                                                                        ©2017 Florida Realtors®
Serial#: 080085-200150-7573701                                                                                             formsimplicity

47  6. **Broker Authority: Seller** authorizes **Broker** to:
48      (a) Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless
49          limited in (6)(a)(i) or (6)(a)(ii) below.
50          **(Seller opt-out) (Check one if applicable)**
51*         (i) ☒ Display the Property on the Internet except the street address.
52*         (ii) ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
53              **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings
54              on the Internet will not see information about the Property in response to their search.
55*             _____/_____ **Initials of Seller**
56      (b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller**
57          signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
58      (c) Obtain information relating to the present mortgage(s) on the Property.
59      (d) Provide objective comparative market analysis information to potential buyers.
60*     (e) **(Check if applicable)** ☒ Use a lock box system to show and access the Property. A lock box does not
61          ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock
62          box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor
63          Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
64*         ☐ Withhold verbal offers.  ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
65      (f) Act as a transaction broker.
66      (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These
67          websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or
68          reviews and comments about a property may be displayed in conjunction with a property on some VOWs.
69          Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews
70          about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or
71          comments and reviews about this Property.
72*         ☒ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such
73          estimate) to be displayed in immediate conjunction with the listing of this Property.
74*         ☒ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or
75          display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

76  7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
77      (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to
78          **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
79      (b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during
80          reasonable times.
81      (c) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
82      (d) ~~Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature,~~
83          ~~including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's**~~
84          ~~negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the~~
85          ~~existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker~~
86          ~~who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This~~
87          ~~clause will survive **Broker's** performance and the transfer of title.~~
88      (e) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
89      (f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not
90          readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such
91          material facts (local government building code violations, unobservable defects, etc.) other than the following:
92* _____
93      **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
94      (g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign
95          reporting requirements, and other specialized advice.

96  8. **Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing,
97      and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other
98      terms acceptable to **Seller. Seller** will pay **Broker** as follows (plus applicable sales tax):
99*     (a) ___6___ % of the total purchase price plus $ 0.00 _____ OR $ 0.00 _____, no
100         later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's**
101         fee being earned.
102*    (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option
103         is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this
104         subparagraph.

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 2 of 4.

ERS-17tb  Rev 6/17                                                                                              ©2017 Florida Realtors®
Serial#: 080085-200150-7573701

formsimplicity

105*     (c) _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106         agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107         contract granting an exclusive right to lease the Property.
108     (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, ~~whether~~ by
109         sale, ~~lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether~~
110         *and* the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111         price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*        cancel an executed sales contract. (3) If, within 30 ____ days after Termination Date ("Protection Period"),
113         **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114         **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115         However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116         broker.
117*    (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive __50__ % (50% if
118         left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119         exceed the Paragraph 8(a) fee.

120 **9. Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121     compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122     with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*    ☑ 2.5%-$250 % of the purchase price or $ 0.00 _____ to a single agent for the buyer; ☑ 2.5%-$250 % of the
124*    purchase price or $ 0.00 _____ to a transaction broker for the buyer; and ☐ ____ 0 % of the purchase
125*    price or $ 0.00 _____ to a broker who has no brokerage relationship with the buyer.
126*    ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127 **10. Brokerage Relationship:** **Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128     for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129     the value of the residential property which are not readily observable to the buyer; will present all offers and
130     counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131     **Seller** unless waived in writing.

132 **11. Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133     **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*    expenses incurred in marketing the Property, and pay a cancellation fee of $ 0.00 _____ plus
135     applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136     8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137     during the time period from the date of conditional termination to Termination Date and Protection Period, if
138     applicable.

139 **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140     matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141     settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142     agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143     reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*    **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____)
145     agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146     the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147     agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148     Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149     equally split the arbitrator's fees and administrative fees of arbitration.

150 **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151     administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152     Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153     will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154     will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155     The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156     of potential or actual transferees.

157* **14. Additional Terms:** ALL TERMS AND ANY CONTRACT TO SELL ARE SUBJECT TO COURT APPROVAL.
158* _____
159* _____
160* _____
161* _____
162* _____
163* _____
164* _____
165* _____
166* _____
167* _____
168* _____
169* _____

170* **Seller's Signature:** _NICOLE CAMERON, TRUSTEE_ Date: _____
171* Home Telephone: _____ Work Telephone: ~~727-362-9003~~ Facsimile: _____
172* Address: _____
173* Email Address: ~~rdauval@leavenlaw.com~~
174* **Seller's Signature:** _____ Date: _____
175* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
176* Address: _____
177* Email Address: _____

178* **Authorized Sales Associate or Broker:** _____ Date: _____
179* Brokerage Firm Name: CHARLES RUTENBERG REALTY, INC   Telephone: 813-532-5378
180* Address: 1545 BELCHER ROAD, CLEARWATER, FL  33764

181* Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-17tb   Rev 6/17                                                                                             ©2017 Florida Realtors®
Serial#: 080085-200150-7573701                                                                              formsimplicity



**CRR Seller's Disclosure Statement**

Seller(s) name(s): *Nicole Camavon* ~~RICHARD DAUVAL~~, CH. 7 TRUSTEE FOR RONALD STEELE 19-06147

Property address: 9458 WATERFORD OAKS DR, WINTER HAVEN FL 33884-2233

**LEGAL REQUIREMENTS**: The *Statute of Frauds* requires that all contracts for the sale of real property in Florida must be in writing and signed by all parties to be enforceable. You have the right to legal counsel to review the purchase agreement and represent you prior to, and even after, entering in to any purchase agreement.

**EQUAL HOUSING OPPORTUNITY**: Both Federal and Florida law require that all parties be treated fairly and without regard to race, color, religion, national origin, ancestry, sex, marital status, sexual orientation, presence of children, or physical or mental disability.

**AGENCY**: Charles Rutenberg Realty Inc., (hereinafter "Broker") will be acting as a transaction broker as defined under §475.278(2) Fla. Stat. As such, Broker will deal honestly and fairly with Buyer and/or Seller, will use skill, care and diligence in the transaction, will disclose all known facts that materially affect the value of property which are not readily observable to the buyer, and will present all offers and counteroffers in a timely manner unless directed otherwise in writing. Please be advised that other forms of agency are also available, but require a separate writing.

**E-SIGN LEGISLATION**: The adoption of the Uniform Electronic Transactions Act under §668.50 Fla. Stat. (hereinafter "UETA") and accepted in most other states, as well as the passage of Electronic Signatures in Global and National Commerce Act (hereinafter "ESIGN") at the federal level in 2000, solidified the use of electronic records and electronic signatures in commerce. Seller(s) understand that both UETA and ESIGN provide that electronic records and electronic signatures carry the same weight and legal effect as traditional paper documents and wet-ink or handwritten signatures. *A record or signature may not be denied legal effect or enforceability solely because the record or signature is in electronic form.* §668.50(7)(a) Fla. Stat. *A contract may not be denied legal effect or enforceability solely because an electronic record was used in the formation of the contract.* §668.50(7)(b) Fla. Stat. Some documents may be emailed to Seller(s) and once signed they are legally binding.

**COMMUNICATION CONSENT FORM**: As a present and/or possible return customer or client of Broker, I hereby consent to receive communications from the Broker, its employees, and/or its agents.

**PROPERTY INFORMATION**: The square footage, homeowner's association information, acreage, legal description, age, lot and room sizes, zoning and mortgage status on the subject property as represented by the Seller(s) are deemed accurate, but are not warranted by Broker, its employees, and/or its agents. ~~Seller(s) agree to indemnify, hold harmless and release the Broker, its employees, and/or its agents from any and all liability for loss or damage, pertaining to one or more of the following or above is found to be incorrect or lacking including but not limited to: building permits; schools; the title search; deed restrictions~~ or association documents; transmittal of mortgage data; building specifications; ~~structural and/or public tax record~~ data.

**MULTPLE LISTING SERVICE:** All information provided in the multiple listing service (hereinafter "MLS") including but not limited to square footage, homeowner's association information, acreage, legal description, age lot and room sizes, zoning and mortgage status on the subject property are deemed accurate, but are not warranted by Broker, its employees, and/or its agents. It is recommended by Broker, its employees, and/or its agents that you contact the Developer, Builder or Association directly prior to entering into a contract to determine any matters that are important to you. Seller agrees to indemnify, hold harmless and release the Broker, its employees, and/or its agents from any and all liability for loss or damage, in connection with any inaccurate information provided in the MLS. An MLS Fee may be charged to the co-operating Broker in your transaction. This fee is to offset MLS costs and marketing. No additional fees or costs will be accrued by the seller in regards to the MLS Fee.

**MULTIPLE OFFERS:** Even though you may have entered into an authorized brokerage relationship with Broker, you understand and agree that multiple offers may be presented on the property on which you have listed for sale, including offers through other the Broker employees, and/or its agents who have entered into similar brokerage relationships with prospective buyer(s). A seller is under no obligation to negotiate offers in the order received and it is at the seller(s) discretion as to which offer to accept, reject or negotiate. No offer is accepted until a purchase agreement fully has been executed by both parties, and has been delivered to the buyer(s).

**GOVERNING LAW AND CHOICE OF VENUE:** Florida laws shall govern any dispute arising out of or in any way relating to Buyer(s) purchase of real property or the relationship between Buyer(s) and Broker, its employees and/or agents. The venue for any litigation or other preceding involving Broker, its employees and/or agents shall be exclusively in the Sixth Judicial Circuit Court of Pinellas County.

**ESCROWED FUNDS:** As a matter of company policy, Broker does not accept funds to be placed in escrow. As such any funds received, will be returned to the sender by First Class postage with the United States Postal Service, within three (3) business days of receipt. Seller(s) agree to indemnify, hold harmless and release the Broker, its employees, and/or its agents from any and all liability for loss or damage, in connection with any escrowed funds misdirected to Broker, and for any delay or lapse in contract related to the return of same.

**CLOSING AGENT INFORMATION:** Name: Jeff Rybolt-Great American Title  Phone: 813-962-7886

Address: 27642 Cashford Circle, STE 104, Wesley Chapel, FL 33544

Seller's signature: _____  Date: _____

Printed name: RICHARD DAUVAL, CH. 7 TRUSTEE
*Nicole Cameron*

Seller's signature: _____  Date: _____

Printed name: _____

Page 2 of 2
SELLER'S DISCLOSURE STATEMENT
REVISED November 2016

INITIAL(S):_____

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE NOTICE

To:  RICHARD DAUVAL, CH. 7 TRUSTEE FOR RONALD STEELE 19-06147

Property:  9458 WATERFORD OAKS DR, WINTER HAVEN FL 33884-2233

From: Charles Rutenberg Realty, Inc.                           Date: 8/7/19

  Charles Rutenberg Realty Associates, Inc.

This is to give you notice that Charles Rutenberg Realty, Inc. and Charles Rutenberg Realty Associates, Inc. (Charles Rutenberg Realty) have a business relationship with Integrity Title & Guaranty Agency, LLC. The owner of a majority of the outstanding shares of Charles Rutenberg Realty is the owner of 50% interest in Integrity Title & Guaranty Agency, LLC. Because of this relationship, this referral may provide Charles Rutenberg Realty a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider as a condition for the purchase or sale of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND BEST RATE FOR THESE SERVICES.

**Provider: Integrity Title & Guaranty Agency, LLC.**

Settlement Services

| | |
|---|---|
| Title Insurance Premium: | As Promulgated by the Florida Department of Financial Services |
| Closing/Settlement Fee: | $350.00 |
| Search Fee: | 75.00 |
| Overnight Courier Fee: | 25.00 (if applicable) |
| Wire Fee: | 25.00 (if applicable) |

Note that pricing fees may change per the transaction, this is an estimate of fees.

Integrity Title & Guaranty Agency, LLC. has the right to adjust pricing according to the transaction.

ACKNOWLEDGMENT:

I/We have read this disclosure form and understand that Charles Rutenberg Realty if referring me/us to purchase the above described settlement service(s) and may receive a financial or other benefit as the result of this referral.

_____ - Seller

_____ - Seller